FOURNET, Chief Justice.
The plaintiff, William Warren Munson, is appealing from a judgment in favor of the defendant, Isidore Larguier, dismissing plaintiff’s suit to recover $2,190 ($790 allegedly due as a realtor’s commission under a verbal agreement to sell defendant’s property, and a $1,400 claim of Mr. and Mrs. Addie J. Clifton, duly assigned to plaintiff, allegedly due as damages because of the defendant’s failure to-comply with his written offer to purchase the Clifton property); and, under the-defendant’s reconventional demand, ordering plaintiff to return to the defendant certificates of stock deposited with the plaintiff, and to pay to the defendant a money judgment in the sum of $250.
During the spring of 1948, Mr. and Mrs. Clifton verbally listed for sale with the-plaintiff, -a real estate broker in Baton Rouge, their property on Greenwell Springs-Road, consisting of some 37 acres with improvements; and on May 21, 1948, the defendant executed an offer to purchase the-above property for $28,000 in cash, the act of sale to be passed within 60 days from date of acceptance. The offer contained the stipulation that if the offeror could not dispose of his home at 2021 Myrtledale Avenue, Baton Rouge, within 60 days from date, then “this offer may be declared null and void by either party,” and the further stipulation that if accepted the $2,500 deposited with plaintiff was not to be considered' as earnest, “the parties hereto reserving the right to demand specific performance.” (Actually, this deposit was not in cash, but consisted of two certificates representing 25 shares of stock in the Baton Rouge *698 Brick and Tile Company having a par value of $100 per share.) The offer was accepted by the Cliftons on June 1, 1948.
On the same day that he signed the above offer, the defendant listed his residence on Myrtledale ■ Avenue with the plaintiff through the latter’s agent, John B. Myers; and as a result of the plaintiff’s efforts a formal offer to purchase this property was obtained from Nicholas J. Lymberis under date of June 27, 1948, for the price of $15,800, conditioned upon the ability of Lymberis to obtain a conventional loan. The offer also contained a stipulation that the act of sale was to be passed within 40 days from date of acceptance, and a recitation similar to that in the previous contract, namely, that if accepted, the $250 deposited with the plaintiff was not to be considered as earnest, “the parties reserving the right to demand specific performance.” The defendant accepted this offer on June 30, 1948.
In both of these transactions, in addition to the stipulations written in the two contracts, it appears that there were some collateral understandings to the effect that sufficient funds were to be procured to complete the purchases. In the case of the Greenwell Springs Road acreage, the plaintiff was authorized by both the Cliftons and the defendant to immediately advertise and offer for sale the western portion of the tract at a price, or on terms, subject to the approval of both parties, the amount received (less commissjon) to be deducted from the purchase price of $28,-000. In the case of the Myrtledale Avenue property, in addition to securing a conventional loan, Lymberis was to sell his residence on Violet Street and Nicholson Drive; and on the day that he executed the offer to' purchase defendant’s residence Lymberis had just signed a contract to sell his Violet Street home within 30 days to Clifford L. Allen, the price being $10,800. The contract for this sale was drawn by plaintiff’s agent, Myers, though the prospective purchaser had been procured by Lymberis himself.
In the furtherance of these interdependent transactions, plaintiff did sell some of the Clifton acreage and was negotiating for the sale of an additional portion. Also, through the plaintiff’s efforts, a loan of $6,000 on the Myrtledale Avenue residence ■by the Capital Building & Loan Association was made available to Lymberis about July 8, 1948, but was refused by him because the amount was insufficient. Lymberis thereupon (in early August) applied for an F.H.A. loan, and ah approval and commitment were eventually obtained in amount of $9,200, but the money was not made available by the Franklin Life Insurance Company of Springfield, Illinois, the purchaser of the loan through the F. H.A., until after September 21, 1948. Meanwhile, Lymberis had released Allen from the latter’s agreement to purchase the Lymberis residence because of Allen’s inability to negotiate an F.H.A. loan thereon or to otherwise complete the contract. In *700 spite of this, however, Lymberis was advised by the plaintiff that he would be held to his agreement to purchase the defendant’s home; and plaintiff sought to assist Lymberis in obtaining the necessary funds from other sources. Plaintiff did secure a conventional mortgage on the Lymberis home in amount of $4,500, and offered to sell a second mortgage thereon for $2,100 to make up the remainder of the required cash, agreeing to purchase this second mortgage himself if his efforts were not successful.
During the period of these developments the defendant had become dissatisfied with the time it was taking to close the matter of the F.H.A. loan to Lymberis, and was unwilling and unable to complete his purchase of the Clifton acreage. He sought the plaintiff’s consent to withdraw, making it plain that he considered his contract had expired under the time limit specified therein, but was informed that he would be held to his bargain on both agreements (to buy the Clifton property and to sell his home to Lymberis),' since they were so closely connected they could not be separated. On September 25, 1948, the defendant and Lymberis entered into an agreement whereby the defendant released Lymberis from any further obligation under their contract,, in consideration of the relinquishment by Lymberis to the defendant of the $250 deposited by Lymberis with the plaintiff. •
On the day .preceding the execution of this release, but subsequent to the defendant’s notice to plaintiff’s agent that he considered the contract with the Cliftons terminated, the attorney representing the Cliftons, being apprised of the situation, addressed a letter to the defendant advising him that unless his agreement with the Cliftons was carried out within five days he would be considered in default, and the Cliftons “fully reserve their rights to proceed with such legal steps as may be. necessary.” On November 28, 1948, the Cliftons assigned to the plaintiff their claim for damages against the defendant because of the latter’s failure to fulfill his offer to purchase their property, the recited consideration being the abandonment by the plaintiff of his claim against the Cliftons for a commission on the sale in amount of $1,400. In that instrument it is stipulated that .the Cliftons would not pursue the defendant for specific performance on the contract. This suit followed on December 29, 1948.
The defendant first filed an exception of improper cumulation of actions, which was overruled, and then filed exceptions of no cause and no right of action leveled at plaintiff’s right to recover under the assignment from the Cliftons. These exceptions' are based upon the premise that the allegations fail to disclose that (1) the Cliftons were damaged, (2) the plaintiff earned a realtor’s commission, (3) the con *702 ditions precedent contained in the contract were performed, and (4) the contract was enforceable — since it allegedly contained a potestative condition.
The trial judge, being of the opinion that the Cliftons were without fault in the failure of the defendant to consummate the contract, concluded that they did not owe the plaintiff a commission and therefore maintained the exceptions as to the demand for $1,400 under the assignment. On this phase of the case a rehearing was applied for but was refused, the trial judge assigning for his reason, in addition to the aforementioned, his conclusion that the assignment was without- consideration since it was based upon the theory that a commission was due the plaintiff by the Cliftons; and as the Cliftons could not have recovered from the defendant, as damages, that for which they were not liable, they had no claim to assign to the plaintiff.
The plaintiff meanwhile (on March 12, 1949) secured a second assignment from the Cliftons wherein the latter recited their intention to include in the first assignment all of their rights “to the earnest money in the sum of $2,500.00 in the said offer and acceptance” (represented by the stock certificates in the Baton Rouge Brick and Tile Company, deposited with the plaintiff by defendant) ; and filed an amended and supplemental petition wherein he (plaintiff) sought in the alternative, and only in the event the court should hold that the right to specific performance had been waived by the Qiftons, to have the certificates declared forfeited to him as earnest. The defendant again filed exceptions of no cause and no right of action, and thereafter filed an answer. There was a trial on the merits' and the trial judge, in a well considered opinion, held that the plaintiff was not entitled to recover on his alternative demand under the second assignment, nor on his original demand for the $790 commission on the sale of defendant’s home to Lymberis; and that the defendant, under his reconventional demand, was entitled to a return of his stock certificates, and was also entitled to the $250 deposited with the plaintiff by Lymberis; and judgment was rendered accordingly.
The plaintiff is contending here, as he did in the lower court, that it is immaterial whether these sales were ever consummated, since his commission became due upon the execution of the contracts, in view of the fact that both contained a provision reserving to the parties the right to demand specific performance; and further, that defendant’s failure to fulfill his contract to purchase the Clifton acreage was due largely to his voluntary release of Lymberis under the latter’s contract to buy defend■ant’s home; on the other hand, it is the contention of the defendant that in such contracts as here under consideration, when the sale is not consummated the realtor is entitled to his commission only when he produces a purchaser who is ready, able and willing to purchase the property and the consummation of the sale is prevented *704 ■either by the refusal or inability of the vendor to deliver.
A perusal of the record readily discloses that the defendant’s consent to purchase the property of the Cliftons, and his willingness to proceed with the offer made to them, was contingent upon the sale for ■cash of his home within the prescribed .sixty day period set out in the offer. In •addition to the funds derived from that sale, in order to meet the purchase price ■of the Clifton property there was a contemporaneous understanding between the parties that certain portions of the Clifton acreage were to be sold, and a loan was to be secured on the property. To that end Myers, in addition to securing a contract with Lymberis for the purchase of defendant’s home, participated in many negotiations between the plaintiff and the Cliftons for the sale of portions of their acreage, and was also very active in attempting to secure the necessary finances for the consummation of Lymberis’ offer .to purchase defendant’s property. The record is clear, however, that Lymberis was never able to complete the loan on defendant’s home during the forty day period prescribed, nor for a long time thereafter, and this situation continued up to the very day of the agreement to release.
It necessarily follows, therefore, that inasmuch as neither of the sales was consummated within the prescribed time, under the express terms of the agreements, defendant was at liberty to withdraw from his contracts to purchase the Clifton property and to sell his home to Lymberis.
The argument advanced by the plaintiff that the parties by their actions waived the limited time specified in the contracts, and that the defendant, through his action in voluntarily releasing Lymberis, for a consideration, made it impossible to carry out his agreement to purchase the Clifton property or to enforce the Lymberis agreement to purchase defendant’s home, are untenable. While the parties may have, by sufferance, extended the time for performance from day to day, the term was never extended for a definite period; moreover, the record fails to disclose that at any time prior to his release was Lymberis able, ready and willing to consummate his contract with the defendant. The forty day provision of the Lymberis contract had not only long since elapsed when the check representing the F.H.A. loan was sent from Illinois by the Franklin Life Insurance Company with a letter addressed to its agent and attorney at Baton Rouge, but the proceeds of this check, when added to the amount made available to Lymberis as a loan on his Violet Street home, were still insufficient and left a remainder necessary to consummate the transaction in amount of $2,100. It is true that the plaintiff had agreed to either secure a purchaser for a second mortgage for such amount on the Violet Street home,, or to purchase the second mortgage himself; but Lymberis was never, at any time prior to the date of re *706 lease, able to get all the money together and tender it to the defendant.
The suggestion that since Lymberis, upon signing the release, surrendered to defendant all right to the $250 deposited with the plaintiff, the defendant should not now be allowed to escape his obligation to pay to plaintiff a commission for the sale of his home, is without merit, since such a solution would not only be contrary to the understanding between the parties, as- the facts of this case so clearly demonstrate, but would be at variance with a canon of law set out as a guide in determining conflicts between the parties, namely, that a contract is to be construed so as not to lead to absurd consequences. Revised Civil Code, Article 1945. It is the plaintiff’s position, as disclosed by his testimony, that the two deals (meaning defendant’s -contract to purchase the Clifton property and the Lymberis contract to- purchase defendant’s property) were so closely connected, one growing out of the other and one hinging on the other, as to make them inseparable; and the record clearly shows that the avowed motive for the sale of defendant’s property (home) was to secure the necessary funds within the prescribed time with which to purchase the Clifton property for a home — not a law suit that could not have been even filed within the sixty day period of the Clifton contract, much less have produced the necessary funds with which to complete the purchase.
From the facts of this case, the authorities relied on by the plaintiff in support of his position are not controlling.
The alternative demand of the plaintiff, under the second assignment from the Cliftons, is likewise without merit. Both contracts state in unmistakable terms that the deposits given were not to be considered as earnest.
It therefore follows that the contracts having failed, the defendant is entitled to recover the stock certificates deposited with the plaintiff as agent for the Cliftons, and also the $250 deposited with the plaintiff by Lymberis, and assigned by Lymberis to the defendant in consideration of his release.
For the reasons assigned, the judgment appealed from is affirmed.